Good morning, may it please the court. My name is Lee Raphael. I'm here on behalf of the appellants. Welcome now to the world of bankruptcy, particularly Chapter 13 bankruptcy, and more precisely to loans secured on by liens on a debtor's principal residence within a Chapter 13 plan. Chapter 13 permits a debtor to cure or pre-petition arrears with regards to a loan on their principal residence. This is because of the exception detailed in 1322b-5 to the anti-modification provision of Section 1322b-2, but the plans here go well beyond that. I'm going to start particularly with the addendum to Section A-2. Section A-2 starts off by saying that if a creditor pre-petition sent monthly statements to the debtor that they must continue to do so post-petition. That alone would be fine with my clients. However, the plan then goes further and details exactly what must be contained in those monthly statements. What the lower courts here are saying, if you take this to its logical conclusion, is that the debtors unilaterally in Chapter 13 on a case-by-case basis throughout the United States may determine exactly what must be contained in a monthly statement every single time each individual Chapter 13 plan is confirmed. Apparently they have some sort of unilateral right to determine this on a case-by-case basis. They can't point to a single provision of the Bankruptcy Code that allows this to occur. Congress has the powers under Article 1, Section 8.4 of the Constitution to create uniform laws on the subject of bankruptcy throughout the United States. There's nothing uniform about permitting each individual debtor to require national creditors to have custom monthly statements on each Chapter 13 plan that is confirmed around the country. In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act went into effect. It contains Section 524I. Section 524I gives the debtors a cause of action at discharge if they meet all the obligations of their plan and confirm a plan, make all the payments, and get their discharge at discharge if the creditor's willful failure to credit payments received under the plan by stating such failure shall constitute violation of the discharge injunction. As the Supreme Court said in Alexander v. Sandoval, the express provision of one method of enforcing a substantive rule suggests Congress intended to preclude others. I need to get grounded in what we're talking about here. This is an optional local form that may or may not be confirmed. Tell me, what's the problem? What does this cause that is so exciting to you and your client? It requires my client to custom create on a case-by-case basis monthly statements. By putting together information that it already has? No, by creating a special form. From information you already have? That's like saying when I tell my wife the balance of my checkbook can be seen by looking at my checkbook. It's information that's contained in their system somewhere, but they can't be forced and compelled by a Chapter 13 plan to go through their records monthly and create custom monthly statements around the country based on each individual's Chapter 13 plan. What they're doing here is saying, you have to send monthly statements if you did pre-petition. That's fine, but these are eight things that must be included in that monthly statement. We have a national bankruptcy system that my clients have to comply with throughout the country. There's nowhere in the code that requires my client to comply with individual mandates in the Chapter 13 plan to create special monthly statements for each individual debtor the way they want that statement to read. What does it mean, non-binding optional, all the stuff that we now know about this? I'm sorry? It's called a non-binding optional addendum. How does that work? Well, the Central District of California, instead of creating a local rule or a general order as the Kansas court did, they didn't believe that would pass mustard in this court. They decided instead to make it an optional plan addendum that debtors on a case-by-case basis can decide whether to attach their plans or not. There's a model form in the Central District of California, the Chapter 13 plan. This is not part of that form, but they can attach it as they see fit. Then on a case-by-case basis, the courts can determine whether to confirm it with that optional addendum. So the debtor initiates this whole thing? Yes, the debtor decides whether to put it in their plan. What do they put in the plan? This form that was created by the Central District of California judges. Okay. And then what happens? Is the form filled out when the debtor puts it in? It's already completed. It's basically... And where does the information come that goes into that form? It is itself. There's no information to put into it. It's the back of each plan or separate document. It's just this form, the addendum itself. There's nothing to fill out within it. It's just all these mandates that creditors must comply with. Okay. And so then what happens once it's in there? Well, in our situation, we objected to the plan. Yeah, but I mean, what happened? The addendum is there. What's the next step? That causes what to happen? I'm trying to figure out how this works. Help me. Okay. Here's the doggone thing with the addendum. What happens next? Well, the way it works is the debtor presents a Chapter 13 plan. Right. And we either object to the plan or not. And the way the central district judges and the debtors here believe, are you getting to the point where we have to request an exception to the addendum on B3 and 4? Or... I'm just trying to find out what the hell happens next. Okay. There's the addendum. What's next? It's part of the plan. Okay. Then what happens? The creditor has an option to object to the plan or not. Right. And then the court determines whether to confirm the plan over their objection or not. Right. And in this case, all of our objections were, well, sustained in part. They struck one part of the addendum, A7. But the rest of the addendum, they allowed to stand in these cases. All right. Then what happens? Then, well, what we're supposed to do, allegedly, if we didn't appeal like we did timely, then we are supposed to all of a sudden start sending monthly statements in the form that the debtor has required in each plan. Now, how does this form then vary from state to state or jurisdiction to jurisdiction? There is no such form anywhere else other than this Central District of California form. They modeled it after the Kansas local rule. Throughout the country, there's no other forms like it. They have different rules and procedures and jurisdictions that are part of the record that have been objected to by many creditors. There are national rules on part of this that are apparently going into effect in December. Those national rules apparently have a requirement that if there's any payment change, a creditor must use this new form that the rulemaking committee, not the Central District judges, not each individual debtor on a case-by-case basis, but the rulemaking committee, as authorized by Congress, has created a rule that says, if there's a payment change, then you must use this form, which they've also approved, to inform the debtors of a payment change. But there's nothing like this around the country in terms of these eight things must be included in your monthly statements in these particular cases confirmed by these particular judges. I mean, within the Central District of California itself, and it's part of the record, now Chief Judge Peter Carroll rejected the provisions of 8-2 that mandated my client create a custom statement that includes these eight things. If I were a debtor in San Francisco, could I just type in the same thing? You could type in the same thing in your plan. And the bankruptcy court could approve it, and then you'd be in the same pickle. So what's the difference? The difference is that we don't have a national form that my clients can comply with. I said I could do it in San Francisco. But you could require different things. That's the problem about this. There's nothing uniform about this monthly statement that the Central District judges, some of them are requiring, or in Judge Reimer's situation here, one judge in San Francisco in one particular case. They're putting a burden on my client to create custom... You would have the same objection to the San Francisco scenario. We would have the same objection to a particular case in San Francisco if it included all eight provisions of the addendum, seven of them, six of them, or ten different provisions. If I look to the statute, where am I going to find something that says the creditor has a right not to make any other disclosures? There's nothing in the code that says a creditor has a right to not make any disclosures. What we're talking about here is a confirming a plan that mandates the debtor has the burden when confirming a plan to show that their form complies with the code. Their plan here does not comply with the code because there's an anti-modification provision of Section 1322b2. My client has their forms that they use on monthly statements. Here, they're requiring my client to modify that form in these particular cases, and it's something that's just impossible for national creditors to do. What's the right? The right is not to have to do anything that I don't have to do everywhere? Well, the right under 1322b2 is to not have your loan modified, but the question at confirmation is the debtor's burden to show that they are to require their creditors to create monthly statements custom to them around the country. We have a uniform system of bankruptcy, and the only way it can work is if we have uniform procedures for such things. You can't have one judge in one courtroom in Los Angeles confirming a plan that says, yes, you must have the addendum in these eight things, and then in the next case, in front of that same judge, the debtor doesn't require that addendum in their plan, so my client doesn't send those monthly statements. Then in the next courtroom, a judge like Peter Carroll, who refuses to commit the addendum requirements, it's just a hodgepodge mess. Where is that right living in a statute? That's the question I have for the debtors. Where is that right? There's no right for the debtors to modify my client's contract. Your argument is that to allow that to happen is modifying a right that a creditor has. That's correct. The rights under the contract are specified under Nobleman, not just monetary rights to collect fees, but rights to do what they did pre-petition, send a regular statement. I've read Nobleman, and I don't see any such right. Where is it? Within the contract, Your Honor. There's rights to send, if there's a shortage, to modify the payments, to collect fees, to not permit waste on the property. These are all contractual rights. The addendum doesn't modify anything like that. It's just a process for communicating information that's relevant to what's going on. You're not losing any money by this. We are losing money, absolutely. Well, you mean by the cost of preparing this whole thing? What's that? What does it cost to do this? Obviously, there's minimal cost in paper and postage and all that, but I'm talking about a requirement that my client, month by month, review the docket, first of all. The addendum changes one thing on the contract. The contracts in each case here state that any notices pursuant to these contracts will be sent to the property address, and only the property shifts burdens. It requires my client to check the docket every month for a change of address being filed by the debtor. Not sent to my client, but check the docket every month before they send their monthly statement. Then they have to create a custom monthly statement, which is something national creditors simply don't have the ability to do on a case-by-case basis in a uniform system of Chapter 13. It's just a burdensome requirement where there's no provision of the code that this complies with the code. They haven't done so here because there's nothing that allows them to take every one of their creditors in the Chapter 13 and say, okay, your statements must say this. Your statements must say this. That's what the debtors are doing with this addendum. That's the problem here. B3 and B4 then say that if my client wants to get an exception, we have to beg the debtor's counsel for an exception, providing them hopefully what we sent pre-petition asking if this complies. If they say no, then we have to file a motion in front of the court to get an exception to the mandates in the addendum. It burdens my client with additional cost. It shifts burdens, requiring my client to come to the bankruptcy court, not the debtor who chose the bankruptcy forum, but my client then has to come in and ask for an exception to this addendum. In addition to the A2 problems, Your Honor, I haven't even addressed the A6 problems, which then never before in our jurisprudence have required a national creditor when there's a shortage to send quarterly disclosures. RESTLA, Congress has decided that we have annual disclosures when there's a shortage in an account, when there's been this disbursement. Here, instead of saying that Congress is the one that decides, the question is, who decides and what's reasonable? These courts here have decided instead of annual disclosures, as Congress has said, we're going to have quarterly disclosures. What's to stop the next debtor from saying, I want monthly disclosures? What's the purpose of the addendum? What's it supposed to accomplish? Actually, I think it's a cry for help from the bankruptcy court asking for a national rule. Every one of these judges knew that this is going to come up on appeal here. They were hoping that this court would do what this court did in the ransom case and send this to Judiciary Committee and ask for help in resolving the situation on a national level. A couple of judges had cases where at the end of a Chapter 13 plan, there were some post-petition fees that had not been disclosed. They didn't want to see that happen again. The number of cases cited by both sides here show that when that doesn't happen, when the court doesn't annually disclose a disbursement, that the court will then waive it because they haven't complied with the annual disclosure requirements of RESPA. You have the Craig Lightly case, the Dominique case, the Johnson case, the Jones case, it goes on. All these cases show that the bankruptcy courts, if a creditor fails to comply with their requirements under RESPA, to send annual disclosures, that they will waive those fees if they don't disclose them. Every one of these courts has done so. All right, counsel, thank you. We'll give you an opportunity to respond to the other side, and we'll hear from the other side. Good morning, Your Honors. Eric Clark for the appellees. If I could just talk a little bit about sort of the history of how we got to where we're at and what brought this addendum into place because I do think it is relevant with respect to Chapter 13 bankruptcy. If we were to take the vacuum, one would believe that the Chapter 13 mortgage servicing issues are working beautifully and that everybody emerges as they should from Chapter 13 after making their payments for the applicable period with their discharge in hand and a fresh start in their life. The reality is that for years what took place is that they would emerge with a discharge in one hand and shortly thereafter a foreclosure notice again in their other hand. And what that foreclosure notice, what prompted the foreclosure notice were a litany of fees that had come about and been charged back to the debtor's loans, been paid, and the payments that they were making on them, whether it be direct payments or through the plan, were diverted to cover other fees not disclosed by the lender during the Chapter 13 plan. So when they got out of the Chapter 13, thinking that they had made all of the required payments, they were shocked to find that they had $2,000, $3,000, $4,000 still owing on their mortgage and they're right back into foreclosure. That was the problem that this addendum and plan provisions were created to address. It undermines the entire integrity of the Chapter 13 bankruptcy system because it wasn't working. Couldn't you, couldn't that have been cured by the bankruptcy judge saying, in their order, saying any fees not disclosed are hereby discharged? It might have been able to. I mean, that's just a one-sentence statement that it could have taken care of the whole problem, correct? Perhaps. Well, how could it be perhaps if you can discharge undisclosed debt? You can't hold things back. Isn't the whole purpose of the bankruptcy proceeding, disclosure, and everybody put their cards on the table up front? As Judge Baum says in the In re Sanchez case, the three most important words in bankruptcy code are disclose, disclose, disclosure. Absolutely right. I'm very familiar with Judge Baum. And the bankruptcy code, contrary to what Appellant's argument is, the bankruptcy code gives us every right to put these provisions in there. And I will say in a second, first of all, it is important to realize that it is the debtor that provides and proposes the plan. It is up to the debtor to propose a plan, whatever terms they think are applicable under Section 1321. And that's what we've done here. Well, then why don't you propose that language in your plan? Because I think that this actually goes to the heart of what goes on and addresses each and every, perhaps, problem. The problem that we've got is that if we do something at the very end of the bankruptcy case, it provides a very short opportunity to cure any problems that are going on. And so if we leave it, if there's any, what we have found is if there's any ambiguity at all, the mortgage servicing industry is very good at that. The plan provisions that are being used all over the country are plan provisions that are extremely detailed to try and nail them down, because it's like trying to catch a fish with your bare hands. It slips all over the place. So the way the code works is this, is that Section 1322b2 absolutely says we cannot modify the rights of the mortgage holder. We get that, no doubt about it. Nobleman speaks to that. The Supreme Court outlines what the rights are that can't be modified. Those are the rights to repayment in monthly installments over a fixed term at a specified interest rate, the rights to retain a lien, the rights until the debt is paid, the right to accelerate the loan upon default and foreclose, and the right to recover deficiency balances. Absolutely can't modify those rights. But 1322b2 does not act in a vacuum in and of itself. There are exceptions to that exception. Number one, the automatic stay provisions of the bankruptcy code, clearly an exception. That information is not contained in the underlying mortgage documents that we can stay, the proceedings. The bankruptcy code provides us that and modifies those rights there. The bankruptcy code in Section 1322b5 allows a debtor to cure mortgage arrears over a three- to five-year-long period of time. Those are not rights that are outlined in the underlying mortgage documents. Those are provided in the code. And then there is Section 1322b11. B11 says that it allows for a debtor's plan to include any other appropriate provision not inconsistent with this title. So when the appellant says there is no statutory authority within the code for these provisions, that is an any provision, appropriate provision, not inconsistent with the title. So what is inconsistent with the title? The question really becomes whether or not these plan provisions attack 1322's anti-modification provision. That's really the crux of the argument here. Again, Nobleman talks about what the rights are. It's the bargain-for rights. It's very they're somewhat limited. They're not just completely wide in scope. And again, 1322b2 is not the be-all and end-all of the listing of rights. Clearly, the code allows rights to be modified because it does so explicitly. The creditors have not identified one right in the mortgage documents that has been modified. Appellants have stated that all of this information, as the Court pointed out, is already in their internal records. They have to … Well, if that's the case, though, but you have to get a programmer to then reorient all those things for each individual case that would be different from all the non-defaulting loans and even distinguishable from the defaulting loans. So you're creating all sorts of individual programs that become very costly in their application. I think that you're absolutely right that there will have to be some programming done. In the In re. Jones case out of Louisiana, Judge Magner did a thorough job investigating what these servicers do. And in that case, Wells Fargo, one of the biggest servicers in the country, under oath, indicated that all three of the major servicing softwares used in this country have the ability to not only dictate and they can zero in on the proclivities, not of a particular jurisdiction or district, but of each independent judge in the country, that the software already has the ability to do that. And that is on the record and in our record in the In re. Jones case. Well, just because they have the ability, is that a good business practice, though? I think it's a great business practice, because under 1322b-5, the debtor has an obligation to cure their mortgage arrears. They cannot do that if the lenders do not disclose to them what fees they are being charged. The appellants have argued that they are entitled to charge inspection fees and property preservation fees and BPO fees and things of that sort. We don't disagree with that. They are absolutely able to do that. We are not modifying their ability to collect that debt, those fees. What we're saying is that if you're going to charge us that, you've got to tell us that you're going to charge us that. Because what the process was, was that you would take on property inspection fee, leaving only $990 left of that monthly payment, and all of a sudden that payment was short. And it would go into a suspense account, which would generate late fees and additional interest. And that was the game, the shell game that was being played. The irony in the appellant's argument, quite honestly, is that these plan provisions are perfectly allowable, and cases throughout the country, one right after the other, tell us that they're allowable. May I ask a question then? If they can charge the fees, you're saying they can accrue these to the end and never disclose them until the very end. Why is it that when you accrue the fee, the charge, why doesn't it have to be put on that next month's statement? I mean, it's a matter of disclosure. Because the purpose of Chapter 13 is for the debtor to emerge with a fresh start. Well, I appreciate that. But on the other hand, you know, if I have a debt, I expect that somebody's going to charge me extra money. They have to give me notice of it when it occurs, not, you know, six years later. What's so tough about that? We agree that the notice has to be provided when it's charged. That's exactly what this addendum requires. And what we're saying is if you give us notice of it, and we know about it, we'll absolutely pay it. We have no problem paying it. You have a right to collect that money, and we have to pay it. We just want to know that you're charging it. What we don't want you to do is take a little chunk of our monthly payment that we think we're making and apply it towards a fee we don't know about, thereby leaving our monthly payment short and throwing that money into a suspense account and charging us late fees, because that creates a cycle that goes on and on and on. And so, again, the irony here is that what this addendum does is that because prior to the addendum within the Central District, and quite frankly all the country, is debtors would put in all kinds of plan provisions that had everything under the sun in it. And what the judges here did with the authority of 28 U.S.C. 2075 and Federal Bankruptcy Rule 9029 under that authority, what they did was they created a uniform set of plan provisions that said if you use these, we're okay with it. And what that did was that actually made uniform across the district plan provisions that prior to that were literally on a case-by-case basis. The cases that have addressed this issue across the country, and the two main cases that are cited in both briefs, NRA NOSEC, the First Circuit Court of Appeals addressed this issue. It is a pre-2005 amendment case. And it's interesting because the case is miscited in the appellant's brief. They talk about footnote 16 saying that the court says you can't go in and address the accounting practices of a mortgage servicer. And that's what the footnote says. What they extend that to is that we shouldn't mess with the accounting systems. And the accounting practices and accounting systems are very different animals. But what that case actually stands for, it supports our argument beautifully, which is that NOSEC went in and asked for relief because the mortgage servicer was doing some funny things with the money. And the court said you didn't have any provisions in your plan that told them how they had to apply the payments. Had you had those provisions, we would be ruling in your favor. But the absence of those plan provisions mean that we can't give you the relief you seek. Similarly, the In re Collins case, Judge Stare out of the Eastern District of Tennessee went through an exhaustive analysis of the case law on this exact issue. And he talks about noblemen and their modification of rights in 1322b2 and how it works with 1322b11. And it says that in a case going directly to the point the appellant brought up on notice, on the plan provision in that case that said that the notice said it had to tell the debtor, the debtor's attorney and the trustee, which is what our plan provisions say. What the In re Collins case says, that it makes perfect sense for them to do that. They are the ones that hold and contain all of this information. The debtor does not. The notice of rate changes, the notices of mortgage payment changes, the notice of servicer changes. All of that information is held by the debtor's attorney and the trustee. And it says, in fact, such advance notice is essential to the orderly administration of the plan. And they call these procedural mechanisms that allow for the proper administration of a Chapter 13 plan. That's what this addendum is all about. It's about setting up procedures. We are not modifying any rights, and the appellants have not articulated one right in the underlying loan documents that has been modified. The fact that they have this individual problem and they would like one rule, one size fits all for the entire country, I can sympathize with it, but that is Congress's issue to deal with. Right now we are faced with a bankruptcy code that could probably use some tweaking, but the fact is that we've got to deal with what we've got. And it allows for plan provisions. The case law throughout the country is crystal clear on this. Every case out there, I haven't seen one that says that these provisions violate 1322b2. Is there any part of Judge Pappas' opinion for the BAP that you take exception to? Not off the top of my head. Not off the top of my head. I want to just briefly speak to the RESPA issue, because the appellants brought that up. They talk about the fact that this is duplicative of RESPA, and the fact is it's not. RESPA on its face indicates that it's a floor for protections. It affords greater protections, which these provisions provide. It also does not identify in the escrow functionality of RESPA that all of these other fees, these legal fees, BPO fees, appraisal fees, and everything else are contained in the escrow items, and quite frankly, in practice, in the real world that we practice in, they're not included in the escrow items. So they are always broken down on proofs of claim outside of the typical escrow items. The other thing about RESPA is that, and this is a really big, important thing, because they keep telling us that the annual statement requirements under RESPA are okay, and that they work beautifully, except that RESPA says that if your loan is in default and you're in bankruptcy, you don't have to send the annual statement requirement. So it can't be okay if you don't have to send it. Do you have anything else, counsel? One last thing. The appellant did talk about the new rules that are in effect. They do incorporate a lot of what this addendum requires. Two points on that. One is I think it's illogical to think that the Rules Committee would come up with a set of rules that violate the bankruptcy code. If they embrace the majority of this addendum, I think that that almost alone speaks for the fact that it doesn't violate the bankruptcy code. Secondly, though, on that issue, I want to make sure that it's clear that the passage of those rules that take effect on December 1st of this year do not moot any part of this case, because the fact is that there are thousands of Chapter 13 cases in the Central District of California that have been pending this addendum, and it is the only protection afforded to them. The rules do not look backwards. They only move forward. And some of those cases have been pending for years. And I think that I'm done. Thank you, counsel. Before you begin, I have a question. I'm looking at the addendum, and it says, except as provided in the monthly statements to the debtor pre-petition, the mortgage creditor must provide monthly statements to the debtor. So if you're giving a monthly statement, you have to continue to do so. The monthly statements must contain at least the following information concerning post-petition mortgage payments to be made outside the plan. Why wouldn't you want to give that to the debtor? These are things that are not easily provided to the debtor. What I think we should be or have to provide, Your Honor, is what the contract requires us to provide, which is how much they're supposed to make every month. When Congress instituted 524-I, it said that at discharge, the creditor is required to then go in and modify their internal accounting records. When Congress says that that's the point when the creditor's records need to be modified, it's implicitly saying that they don't need to be modified while the case is going. So you don't want to tell creditors about the post-petition mortgage payments that they're going to have to make outside the plan? No, that's not the case. I do want to provide them the amount of the monthly payment. What I don't want to have to do is create custom statements that contain the rest of these things. How are you going to then tell the debtor what the post-petition mortgage payments outside the plan are? Just like we do pre-petition, sending them a statement, this is what your monthly payment is, this is what your monthly payment is, this is what your monthly payment is. Just like a coupon book would, this is what your monthly payment is. Not creating a custom accounting every month for debtors within this district, actually within this court, this particular case actually. We have some cases in front of judges that don't have the addendum. Then the next case does. We have some cases within the same courthouse, the same courtroom that do have the addendum and some that don't. It's impossible for my clients to comply. It's just simply impossible. And as Judge Reimer asked previously about rights, there are bargains for rights in the contract. The right to obviously collect the mortgage payments, payments in interest. The right to charge late fees. The right to assess fees for other charges. If they're appropriate. And Congress has decided. Now, counsel incorrectly states that the RESPA exception to bankruptcy applies when there's an advance. When there's a shortage, as the cases cited show, when there's a second section of RESPA that's not accepted from bankruptcy. When there's a shortage, a lender must provide an annual notice. All of the cases that we cite and that include the Jones case, the court will waive them. If you advance taxes and don't tell the debtor annually, we will waive them. What we object to is this court saying they must be provided quarterly. These courts are going to say, the bankruptcy courts. We object to this bankruptcy court saying that in my case, this particular case, I want this statement to read this way. When in the next case, you may have an entirely different statement that they have to create. If we agree with you and throw this addendum out, could any bankruptcy judge simply require you to do the same thing that the addendum requires you to do, and that is including your statements, mortgage payments to be made outside the plan? I'm sorry, I didn't hear that. Could any judge require you to do this, even if it were not part of the addendum? The addendum's out. Okay, so a judge says, I'm doing it anyway. Does the judge have the authority to do that? I think the judge has the authority to require us to do what we did pre-petition, post-petition, but I don't think they have the ability of bankruptcy judge on a case-by-case basis to determine that in my court, I want creditors in Chapter 13 to start sending custom statements. I do not believe they have the authority to do that. I think the Congress has the authority to create a national rule, which they've done, and the national rules that go into effect in Chapter 13 are the same. If a creditor calls you up and says, hey, I want a list of the post-petition mortgage payments that I'm going to have to make outside the plan, what do you and your clients tell them? Buzz off because that requires us to do extra work? No, we provide it to them if they thoughtfully request something. So what's the problem with putting it in the addendum? Having it required with the threat of sanctions, as this addendum does, is improper. So you're happy to provide it with them, to provide it to them if they ask for it? Absolutely. If the contract requires it, as RESPA requires it. Even though it costs you lots of money? I'm sorry? Even though it costs you lots of money, as you claim it does. We'll charge them for it. We're allowed to charge them for these requests. If they ask for a payoff statement, we can charge it for them. And if we charge them for it, Your Honor, we'll disclose it in the annual RESPA disclosure. These are contracts that allow us to charge for our fees. If there's an NSF check, we can charge for it. If there's a late payment, we can charge for it. And counsel doesn't dispute that.
judges: Trott, Rymer, Cjj McNamee (Arizona), Dj